**Victor J. LICH, Jr., Trustee, Plaintiff,**

**v.**

**CORNHUSKER CASUALTY COMPANY, Defendant.**

**No. CV 89–0–78.**

United States District Court, D. Nebraska.

July 1, 1991.

John M. Vodra, Lich, Herold & Mackiewicz, Omaha, Neb., for plaintiff.

Craig W. Feil, Sodoro, Daly and Sodoro, Omaha, Neb., for defendant.

## MEMORANDUM OPINION and ORDER

CAMBRIDGE, District Judge.

This matter is before the Court on cross motions for summary judgment (Filing Nos. 29, 33, and 50). The parties have agreed that there are no genuine issues as to any material facts, that this case can be resolved on the pending motions for summary judgment without a trial, and that all evidence which would have been presented at trial is already before the Court on the pending motions.

This action arises under the market agency bonding provisions of the Packers and Stockyards Act of 1921 (Act), 7 U.S.C. § 181 *et seq.*, as amended. In this action, plaintiff seeks to recover the face value of two surety bonds issued to Robert Brigham by the defendant, Cornhusker Casualty Company. The Court has jurisdiction pursuant to 7 U.S.C. § 209(b) and 28 U.S.C. § 1331(a).

Having considered the parties' briefs, affidavits, depositions, and exhibits submitted in support of the motions, the Court finds that the plaintiff's motions for summary judgment should be granted and that the defendant's motion for summary judgment should be denied.

## FACTS

In 1982, Robert Brigham began operating the Wahoo Livestock Market (WLM), a livestock auction sale facility in Wahoo, Nebraska. As was required under federal law, he registered his business with the Packers and Stockyards Administration (P & SA), a regulatory branch of the U.S. Department of Agriculture. Specifically, he registered WLM to conduct business in three different capacities: (1) to sell on commission, (2) to buy on commission, and (3) to buy as a dealer. In order to operate in these different capacities, Brigham was required to be bonded as directed by the P & SA, pursuant to 7 U.S.C. § 204. The P & SA required Brigham to obtain two standard bonds: (1) a Clause 1 bond, which generally applies to principals who sell livestock on commission, and (2) a Clause 2 bond, which generally applies to principals who buy livestock on commission or as a dealer. In May of 1985, Brigham obtained the required bonds from defendant Cornhusker Casualty Company: a Clause 1 bond in the amount of $65,000 (Bond No. BCC 3250, Plaintiff's Ex. 3), and a Clause 2 bond in the amount of $45,000 (Bond No. BCC 3251, Plaintiff's Ex. 4).[1]

---

1. Specifically, on May 9, 1985, defendant Cornhusker Casualty Company issued to Robert Brigham a Clause 1 bond in the amount of $65,000 (Bond No. BCC 3250, Plaintiff's Ex. 3), listing

Robert Brigham as principal and the defendant as surety. Said bond had an effective date of May 7, 1985, was placed on file with the P & SA, and remained in full force and effect until it

In August of 1986, during a routine review of WLM's financial records, Mr. Edwin Haag, an auditor for the P & SA, discovered significant shortages in WLM's custodial account from which livestock sellers were paid. After a formal investigation in November, 1986, Haag determined that Robert Brigham had made numerous purchases, on a commission basis or as a dealer, out of consigned livestock without paying the purchase price into the custodial account,[2] as required under 9 C.F.R. § 201.-42.[3] Haag determined that such purchases resulted in a shortage of over $121,000 in WLM's custodial account. Haag also determined that WLM was insolvent, i.e., WLM's liabilities exceeded its assets.

On January 30, 1987, based on Haag's audit, the office of general counsel of the P & SA filed an administrative complaint against Robert Brigham d/b/a WLM, alleging insolvency, failure to reimburse the custodial account for Brigham's own livestock purchases, and failure to properly maintain the custodial account.

Brigham ceased doing business at WLM on June 11, 1988, after the P & SA revoked WLM's registration. Brigham's final custodial report, filed on June 30, 1988, indicated that the custodial account had a negative balance of $31.29 and that there were outstanding checks written on the custodial account in the amount of $152,295.92, which would be returned for insufficient funds. A second investigative audit was conducted by Mr. Haag in July, 1988, to determine which livestock sellers remained unpaid by virtue of the shortage in the custodial account. On July 5, 1989, a second administrative complaint was filed against Robert Brigham d/b/a WLM, alleg-

ing failure to pay for livestock and custodial account misuse. On July 29, 1988, the Clause 1 and Clause 2 bonds issued by the defendant were terminated.

On September 29, 1988, plaintiff Victor J. Lich was duly appointed, pursuant to 9 C.F.R. § 201.32, to serve as Trustee on behalf of all the unpaid livestock sellers and creditors. Most of these claimants, listed in plaintiff's exhibits 27 through 51 and on pages 2–4 of the pretrial order, had consigned livestock to Brigham d/b/a WLM to be sold at auction, but were never paid. Their combined unpaid claims total $132,844.20.

On November 16, 1988, plaintiff made demand upon defendant for payment of the sum of $65,000 on the Clause 1 Bond and $45,000 on the Clause 2 Bond. In making such demand, plaintiff asserted that,

Claim is made under the Clause 1 Bond for cla;mants who were not paid when Robert Brigham sold [livestock] on commission. Claim is made under the Clause 2 Bond for sellers who were not paid by reason of Robert Brigham buying on commission or as a dealer from consignments to him as a market agent selling on commission.

(Plaintiff's Ex. 56). Defendant refused plaintiff's demand under both bonds and plaintiff filed this action.

Although defendant initially denied liability under both bonds in its answer, defendant has now conceded liability under the Clause 1 Bond in the amount of the bond's face value, $65,000. In satisfaction of that liability, defendant has deposited the sum of $65,000 into the Registry of the Court on June 4, 1990.

---

was terminated on July 29, 1988. Also, on May 5, 1985, defendant issued to Robert Brigham a Clause 2 bond in the amount of $20,000 (Bond No. BCC 3251, Plaintiff's Ex. 4), listing Robert Brigham as principal and the defendant as surety. The Clause 2 bond had an effective date of May 7, 1985, and was placed on file with the P & SA. On May 20, 1985, Robert Brigham and the defendant filed an amendment to the Clause 2 bond, increasing the amount of the bond to $45,000. The amendment had an effective date of May 7, 1985. The Clause 2 bond, as amended, remained in full force and effect until it was terminated on July 29, 1988.

2. Robert Brigham later admitted purchasing livestock from consignment without paying the custodial account during a § 341 hearing after he and his wife filed for bankruptcy. *See In re: Brigham*, No. BK 88–1903 (Bankr.D.Neb. Jan. 3, 1989) (Plaintiff's Ex. 26). Brigham also admitted such conduct in his deposition (Plaintiff's Ex. 56).

3. Pursuant to 9 C.F.R. § 201.42, Brigham was required to place any funds received from selling livestock on commission into a custodial account, to be kept in trust for livestock sellers.

## ISSUES

The primary issue remaining for the Court is the extent of defendant's liability, if any, under the Clause 2 Bond. Other issues to be addressed include the timeliness of certain claims against the bonds, and plaintiff's entitlement to prejudgment interest, attorneys' fees, trustee's fees, and costs.

## DISCUSSION

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. *Liability on the Bonds*

██ As noted above, defendant has conceded liability on the Clause 1 bond and has deposited the face value of the bond, i.e., $65,000.00, in the Registry of the Court. Plaintiff argues, however, that defendant is liable under both the Clause 1 bond and the Clause 2 bond (Plaintiff's Exhibits 3 and 4, respectively).

Clause 1 and Clause 2 bonds, as well as two other types of bonds required of market agencies, dealers and packers in the livestock business, are all pre-printed on a standard form, known as Form P & SA–1. The P & SA determines what type of bond or bonds will be required of the market agency or dealer, and the market agency or dealer arranges to obtain the proper bond from a bonding company, such as the defendant. The bonding company prepares the particular type of bond requested by deleting the bonding conditions which are not applicable.

Both the Clause 1 bond and the Clause 2 bond provide that the principal and surety, jointly and severally, are liable to the Trustee, as trustee for all persons who may be damaged through breach of the designated bond. Paragraph one (1) of Form P & SA–1, commonly referred to as Clause 1, specifically provides:

Now, Therefore, the Condition of this Bond is such that:

**Applicable if Principal SELLS on commission**

**(1) If the said Principal shall pay when due to the person or persons entitled thereto the gross amount, less lawful charges, for which all livestock is sold for the accounts of others by said Principal,** ... then this bond shall be null and void, otherwise to remain in full force and virtue, subject to the following terms, conditions, and limitations ...

(c) Any person damaged by failure of the Principal to comply with any condition clause of this bond, may maintain suit ... to recover on this bond.... The Trustee may maintain suit in his own name, the recovery to be made for the use of the persons damaged.

The parties agree that a Clause 1 bond typically applies where the market agency fails to remit sale proceeds to a livestock seller after the seller has consigned his livestock to the market to be sold at auction. Because most of the claimants herein consigned livestock to WLM but were not paid, and because their claims far exceed the face value of the Clause 1 bond, defendant's liability under Clause 1 is clear.

Defendant argues, however, that its liability stops there and that there is no Clause 2 bond coverage in this case. Paragraph two (2) of P & SA Form–1, commonly referred to as Clause 2, provides:

Now, Therefore, the Condition of this Bond is such that:

**Applicable if Principal BUYS on commission or as a dealer**

**(2) If the said Principal shall pay when due to the person or persons entitled thereto the purchase price of all livestock purchased by said Principal for his own account or for the accounts of others, and if the said Principal shall safely keep and properly disburse all funds, if any, which come into his hands for the purpose of pay for livestock purchased for the accounts of others,** ... then this bond shall be null and void, otherwise to remain in full force and virtue, subject to the following terms, conditions, and limitations:

(c) Any person damaged by failure of the Principal to comply with any condition clause of this bond, may maintain suit ... to recover on this bond.... The Trustee may maintain suit in his own name, the recovery to be made for the use of the persons damaged.

Plaintiff argues that Robert Brigham's failure to pay the custodial account for his own purchases of consigned livestock and to safely keep all custodial account funds for the benefit of livestock sellers constituted a breach of the condition set forth in Clause 2. Specifically, plaintiff argues that Brigham's failure to reimburse the custodial account for his own purchases, although remote in time from the claimants' transactions with WLM, was directly responsible for the shortage of funds in the custodial account. In support of this argument, plaintiff has offered the depositions and affidavits of Merle E. Paulsen, Chief of the Financial Branch of the P & SA, Keith Kienow, P & SA's Regional Supervisor for the Omaha Region, and Edwin D. Haag, an auditor for the P & SA.

In his affidavit, Mr. Paulsen explained that in a typical market transaction the livestock seller delivers his livestock on consignment to the market agency, the livestock is sold at auction, the market agency deducts a commission and other stockyard fees from the sale proceeds and then deposits the net sale proceeds in the custodial account for payment to the seller. Mr. Paulsen stated that a Clause 1 bond pertains to the situation where the market agency sells livestock on commission and then fails to remit the sale proceeds to the seller; in contrast, a Clause 2 bond applies to the situation where the market agency purchases livestock for its own account or for the account of others and then fails to pay the custodial account for the livestock. He stated that it was the P & SA's official position that when a market agency or dealer purchases livestock out of consignments and fails to pay for it, then any unpaid seller would have a valid claim on a Clause 2 bond, because the dealer's actions have reduced the funds available in the custodial account for the benefit of the sellers. (Plaintiff's Exhibit 25).

In his deposition, Mr. Kienow also testified that he believed there was Clause 2 liability in this case, because Robert Brigham had made purchases out of consignments without paying the custodial account for those purchases. Mr. Kienow opined that this case would not involve any Clause 2 liability if Robert Brigham had in fact paid the custodial account for his livestock purchases. He believed that the claimants in this instance were entitled to both the Clause 1 and Clause 2 bond proceeds. (Plaintiff's Exhibit 55).

In his deposition, Mr. Edwin Haag, the investigating auditor for the P & SA in this case, stated that during his investigation of WLM in 1986 he discovered that there was a shortage of funds in the custodial account due to mishandling of the account and Robert Brigham's failure to pay the custodial account for livestock purchases he had made out of consignment. He, like Mr. Paulsen and Mr. Kienow, believed that the unpaid sellers in this case were entitled to the proceeds of both the Clause 1 bond and the Clause 2 bond, because (1) those sellers were not paid for livestock they had consigned to WLM (Clause 1), and (2) Robert Brigham had failed to pay the custodial account for his livestock purchases from consignment, leaving the custodial account in a deficit situation (Clause 2). (Plaintiff's Exhibit 57).

In his deposition, Robert Brigham stated that shortages in the custodial account began in 1985, when the farm economy slowed down and fewer commissions were coming in. He admitted that he did not always reimburse the custodial account for livestock purchased by the market. On numerous occasions he sold livestock at a loss because he got stuck supporting the market.[4] He also stated that when the market's general account ran low, he was unable to reimburse the custodial account

---

4. Brigham explained that "he got stuck supporting the market" during down markets when he would pay a late seller the going market price that was paid to other sellers earlier in the day, and then was unable to get the same price at auction the next day.

for livestock he had purchased. He recalled that at one point the market's general account owed the custodial account $121,321.01. (Plaintiff's Exhibit 56).

Plaintiff argues that this evidence supports his argument that both bonds were breached by Brigham, and therefore defendant is liable on both bonds. Defendant argues, however, that there is no Clause 2 bond coverage, because Brigham did not *buy* on commission or as a dealer on behalf of the claimants. Defendant asserts,

> [A] Clause 2 bond covers a situation whereupon an off-the-market buyer fails to pay money to the Wahoo Livestock Market when the Market agency purchases livestock for that off-market buyer. If the seller is not paid, he has a Clause 2 claim. The same holds true if the Market purchases as a dealer livestock and fails to pay for them; that person who sold the livestock has a Clause 2 claim. The claimants and the transactions in the case at bar, are not able to show that the livestock they sold were not paid for by the buyer and thus they do not have a Clause 2 claim.

Defendant's Brief at 10. Defendant has cited no caselaw or specific evidence to support its interpretation of Clause 2. Alternatively, defendant argues that plaintiff cannot be entitled to coverage under both the Clause 1 and Clause 2 bonds, because the bonds are mutually exclusive.

The Court finds that defendant's arguments with respect to Clause 2 coverage and dual coverage are without merit. First, defendant's interpretation of Clause 2 runs contrary to the interpretation of every P & SA official that has testified by deposition and who is familiar with the bonding requirements and practical application of the bonds in question.

> When faced with a problem of statutory construction, [the] Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. * * * When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

*Udall v. Tallman,* 380 U.S. 1, 7–10, 85 S.Ct. 792, 796–98, 13 L.Ed.2d 616 (1985). In this instance, the Court is satisfied that the P & SA officials' explanation of the applicability of the bonds under these facts is reasonable and should be given considerable weight.

Second, the condition of Clause 2 clearly required the principal (i.e., Brigham) to pay the purchase price of all livestock purchased by said principal for his own account or for the accounts of others. It cannot be disputed that Brigham, d/b/a WLM, breached this condition by failing to pay for livestock he purchased from consignment. Such conduct directly resulted in significant shortages in the custodial account. The condition of Clause 2 also required that the principal "safely keep and properly disburse all funds, if any, which come into his hands for the purpose of paying for livestock purchased for the accounts of others." Such language clearly imposed a duty upon the principal to properly maintain the custodial account for the benefit of livestock sellers. The evidence is clear that Brigham breached this duty by his admitted mismanagement of the custodial account and failure to reimburse the custodial account.

■ Third, the condition of Clause 2 did not require that Brigham's purchases of livestock be made on behalf of the claimants in this action, as defendant suggests. Such an interpretation would be too narrow and would thwart the underlying purpose of the bonding requirement, which is to protect livestock sellers against losses caused by defaulting or insolvent market agencies and purchasers. *See Travelers Indem. Co. v. Manley Cattle Co.,* 553 F.2d 943 (5th Cir.1977); *Bruhn's Freezer Meats of Chicago, Inc. v. U.S. Dept. of Agriculture,* 438 F.2d 1332 (8th Cir.1971). It is well recognized that the Packers and Stockyards Act, which requires the bonding of market agencies and dealers, 7 U.S.C. § 204, is remedial legislation and that such legislation should be liberally construed to effectuate its purpose of protecting sellers. *Id.*

Finally, defendant's reliance upon a statement made by Merle E. Paulsen, Chief of the Financial Protection Branch of the P & SA, in his deposition, in which he states that Clause 1 and Clause 2 bond coverages are mutually exclusive (Depos. at 41:16–25), is misplaced. It appears that Mr. Paulsen was referring to the more typical situation in which the alleged breach of the bond involves mere nonpayment to the seller due to mismanagement of the custodial account and does not involve, in addition thereto, an agency's failure to pay the custodial account for its own livestock purchases out of consignment. Mr. Paulsen explained that this is a unique case because it involves both (1) a claim for failure to pay sellers for their consigned livestock (a Clause 1 claim), and (2) a claim for the Brigham's failure to pay the custodial account for his own purchases of livestock (a Clause 2 claim).

The Court agrees with Mr. Paulsen's assessment that the facts of this case are unique and support a finding that there has been a breach of both the Clause 1 and Clause 2 bonds in issue. Therefore, the Court will grant the plaintiff's motion for summary judgment on the issue of liability under both bonds.

Assuming liability under only the Clause 1 bond, defendant argues that some of the claims represented by plaintiff, totalling $16,168.34, are not entitled to any bond coverage because they are either untimely or are claims by persons other than sellers of livestock. The Court finds that such issues are moot, because (1) the Court has already determined, *supra*, that plaintiff is entitled recover under both the Clause 1 and Clause 2 bonds, and (2) the difference between the total of the claims filed ($132,844.20) and the total of the claims disputed by defendant ($16,168.34), i.e., a difference of $116,675.86, still exceeds the total amount which plaintiff will be able to recover under both bonds ($105,000.00).

B. *Prejudgment Interest*

■ Plaintiff requests that the Court award prejudgment interest at the rate of 12% interest, pursuant to Neb.Rev.Stat. § 45–104, calculated from the date of plaintiff's letter for demand of payment, i.e., November 16, 1988. Defendant asserts that since the P & S Act does not address the issue of interest, then an award of prejudgment interest would be improper. In the alternative, defendant argues that an award of interest on the Clause 1 bond should cease to accumulate from the time that defendant made an offer of judgment on January 12, 1990, or at least at the time in which defendant deposited the $65,000.00 bond amount into the Registry of the Court on June 4, 1990.

In *Cook v. Hartford Accident & Indem. Co.*, 657 F.Supp. 762 (D.Neb.1987), Judge Robinson stated,

On the issue of prejudgment interest * * * the matter is a discretionary one for the Court. It is clear that the Packers and Stockyard Act neither prohibits nor demands that prejudgment interest be awarded. The Act does admonish, however, that "[i]f any person subject to this chapter violates any of the provisions of this chapter, ..., relating to the purchase, sale, or handling of livestock, he shall be liable to the person or persons injured thereby for full amount of damages sustained in consequence of such violation." *See* 7 U.S.C. § 209(a). This matter, contrary to the defendant's argument that Nebraska's restrictive rules on liquidated damages control, is controlled by federal law. *See Rowse v. Platte Valley Livestock, Inc.*, 604 F.Supp. 1463, 1470 (D.Neb.1985) ("Nebraska's restrictive rules on liquidation do not control the availability of prejudgment interest under either the Interstate Commerce Act or the Packers and Stockyard Act.") The theory behind prejudgment [interest] is to "[help] compensate plaintiffs for the time cost of money damages they have incurred." *General Facilities, Inc. v. National Marine Service, Inc.*, 664 F.2d 672, 673 (8th Cir.1981).

*Id.* at 771. In *Cook*, the Court held that prejudgment interest was available and should be awarded under federal law. The Court also determined that, in any event, prejudgment interest was available under Nebraska law, which allows prejudgment

interest when the amount of the claim is liquidated. *Id.* (citing *Nebraska Public Power Dist. v. Borg–Warner Corp.*, 621 F.2d 282, 285 (8th Cir.1980).

Based on the foregoing, the Court finds that prejudgment interest should be awarded to plaintiff. Prejudgment interest shall be calculated in the following manner: Interest on the $65,000 Clause 1 bond (Bond No. BCC 3250, Plaintiff's Ex. 3) shall be calculated at the legal rate of 12% interest from November 16, 1988 until June 4, 1990;[5] and interest on the $45,000 Clause 2 bond (Bond No. BCC 3251, Plaintiff's Ex. 4) shall be calculated at the legal rate of 12% interest from November 16, 1988 until the date of judgment.

### C. *Attorneys' Fees, Trustee's Fees, and Costs*

▓ As a final matter, plaintiff requests that the Court award attorneys' fees in the amount of $12,904.50 (Plaintiff's Ex. 57) and $5,336.00 (Plaintiff's Ex. 69), the attorneys' costs of litigation in the amount of $248.14 (Plaintiff's Ex. 57) and $74.30 (Plaintiff's Ex. 69), Trustee's fees in the amount of $2,583.00 (Plaintiff's Ex. 58) and $1,152.00 (Plaintiff's Ex. 68), and the Trustee's costs in the amount of $374.58 (Plaintiff's Ex. 58) and $361.36 (Plaintiff's Ex. 68), in addition to the amount of recovery from the bonds. The defendant opposes the award of any such fees and costs, arguing that such awards are not expressly authorized under the P & S Act.

In other cases involving the P & S Act, courts have looked to state law in determining whether an attorneys' fee should be awarded. See *Cook v. Hartford Accident & Indem. Co., supra,* 657 F.Supp. at 771–73 (allowing a reasonable attorney's fee under Neb.Rev.Stat. § 44–359) and cases cited therein. Based on this caselaw and the statutory authority of Neb.Rev.Stat. § 44–359, the Court finds that plaintiff should be awarded reasonable attorneys' fees.

Plaintiff has requested $12,904.50 in attorneys' fees for the period of January 20, 1989 through April 30, 1990, calculated as follows: 129.80 hours of legal services performed by attorney John M. Vodra at $70.00 per hour; and 42.50 hours of legal services performed by attorney Victor J. Lich at $90.00 per hour. Plaintiff also seeks an additional $5,336.00 in attorneys' fees for the period of May 1, 1990 through July 30, 1990, calculated as follows: 61.70 hours of legal services performed by Mr. Vodra at $70.00 per hours; and 73.00 hours of legal services performed by Mr. Lich at $90.00 per hour.

▓ The Court finds that the hourly rates charged by Mr. Vodra and Mr. Lich for legal services are reasonable and that the work that each of these attorneys performed did not significantly overlap with that of the other. In regard to the legal services performed by Mr. Vodra, the Court finds (1) that the time charged in preparation of plaintiff's brief in support of summary judgment was slightly excessive and thus the fee in this regard should be reduced by $910.00, and (2) that the time charged for the filing of notices and motions at the courthouse was excessive, and thus the fee for such service should be reduced by $110.00. The Court also finds that the time charged for legal services by Mr. Lich was reasonable and did not overlap with the time he separately charged for his Trustee services. Therefore, the Court will award a total of $17,220.50 in attorneys' fees.

With respect to costs incurred by plaintiff's attorneys in this litigation, plaintiff has requested $248.14 for the period of January 20, 1989 through April 30, 1990, and $74.00 for the period of May 1, 1990 through July 30, 1990. The Court finds that such costs are reasonable and that plaintiff should be awarded costs in the total amount of $322.34.

With respect to the Trustee's fees, plaintiff has requested $2,583.00 for the period

---

**5.** The Court finds that defendant's deposit of the $65,000.00 Clause 1 bond amount into the Registry of the Court on June 4, 1990, was sufficient to stop the running of prejudgment interest.

*See In re Dept. of Energy Stripper Well Exemption Lit.,* 124 F.R.D. 217, 218 (D.Kan.1989). *See also* 12 C. Wright & A. Miller, Federal Practice & Procedure § 2991 (1973).

of January 20, 1989 through April 30, 1990, and $1,152.00 for the period of May 7, 1990 through July 26, 1990. With respect to the Trustee's costs, plaintiff has requested $374.58 for the period of January 20, 1989 through April 30, 1990, and $361.36 for the period of May 7, 1990 through July 26, 1990. The Court finds that the award of such fees and costs is proper, that the hourly fee and the time charged are reasonable, and that the costs requested are reasonable. Therefore, the Court will award $3,735.00 for the Trustee's fee and $735.94 as the Trustee's costs.

Accordingly,

IT IS THEREFORE ORDERED:

1. That plaintiff's motions for summary judgment (Filing Nos. 29 and 33) are granted;

2. That defendant's motion for summary judgment (Filing No. 50) is denied; and

3. That judgment shall be entered in favor of plaintiff, as follows:

    a. $65,000 on the Clause 1 bond (Bond No. BCC 3250) with prejudgment interest calculated at the legal rate of 12% interest from November 16, 1988 until June 4, 1990;

    b. $45,000 on the Clause 2 bond (Bond No. BCC 3251) with prejudgment interest calculated at the legal rate of 12% interest from November 16, 1988 until the date of judgment;

    c. In addition to the bond amounts above:

$17,220.50 in attorneys' fees;

$322.34 in attorneys' costs;

$3,735.00 in Trustee's fees; and

$735.94 in Trustee's costs.